May it please the court, counsel. My name is Charles Holtstrand, and I represent the estate of Ella Parker in this matter, as Port and Ella Parker have long since passed away. As you can see from the record, this case began 14 years ago in August of 1992 by way of a 114-page complaint that is now in its third version, third amended version. Yavapai County in Arizona has condemned the entrance road at issue. What's the status of the condemnation proceedings? Have they completed it? No, they're pending, waiting a resolution of this matter. I see. And it's condemned for what purpose? What's going on with the road? It is the entrance road to a large subdivision, large development. But if the county's condemning it, it's for what purpose? At the request of Sedona Golf Resort, for the purpose of a road to the Sedona Golf Resort. To turn it into a private road? I don't understand. To turn it into a public road. To turn it into public access to the resort. Yes. Thank you. They have other access to the resort and the area. This is the one that was privately owned. Before you plunge in with the rest of your argument, let me ask you a couple more preliminary questions, and one that will be obvious to you but not to me, because we don't have the entire bankruptcy record and it's old. Why does a bankruptcy court have jurisdiction over this case? Because it obviously does not involve any property of the estate. The quiet title action doesn't appear to involve the debtor. I don't see a basis for certainly court jurisdiction, and I don't see much of a basis for supplemental jurisdiction. So how did that happen? It was an ancillary proceeding. It was a proceeding, a third-party complaint against Portnella Parker, as part of count six of their complaint. Right. They had also included a complaint against you. May I interrupt just for one second? Sure. Under your theory, your clients, or the predecessor in interest, had acquired the property prior to the bankruptcy, right? Yes. So at the time the bankruptcy was filed, Kenneth Parker, the debtor, had no interest at all in the property, right? That's correct. Okay. Why did the bankruptcy court acquire jurisdiction in property over an action about property which had not formed property of the estate? And I realize that this is not an issue. I can't answer that question specifically, but I believe it was as part of the quiet title claim which included Ken Parker as a defendant. And there were other defendants that were included in that same quiet title claim. I didn't see him included, but it may well have been. But I'll ask your opposing counsel the same question. Right. And that happened three years before I got involved in the case as well. But I, at the time, I did not believe that there was an issue as to jurisdiction. In any event, that wasn't raised or litigated or addressed below? It was not. Not that I know of, no. So all that remains here 14 years later is Count 6 of that quiet title complaint. And the only defendants that remained were Portnello Parker, now substituted into the estate. In that Count 6, the only remaining claim, what the Sedona Golf Resort asked the Court to do was to set aside the Rodriguez deed of trust. That's what they asked them to do. That Third Amendment complaint has never been amended since 1998. The Court said that they would not allow any new theories. And we ended up proceeding after multiple motions for summary judgment in a trial. Now, since I've become involved since 1995 or 11 years ago, Sedona Golf Resort has claimed that they acquired the property, even though they never paid for it, and they never purchased it from the original undisputed owner, which is RSI, because the RIDGID Sedona, Inc. is the original undisputed owner because if they didn't own it, nobody here had any claim to it. Everybody's claim arises out of the RIDGID Sedona, Inc. But the way they said they acquired it was, number one, by judicial order of the bankruptcy court. Then they said, well, it was by conveyance by deed from Yavapai Title. And then they said it was by private plat dedication. Now, there's half a dozen other theories in there that I won't bore the Court with, but we have patiently demonstrated each one of these theories to be false, both factually and legally. But the at the end of the day, at least in 1995, they end up with record title. I'm sorry? At the end of the day in 1998. They end up with record. I'm sorry. It may not have been 95. It was 95. It was February of 1995. They end up with record title. Yes? Record title in the sense that they had color of title based upon the Rodriguez deed of trust. In 1995, the bankruptcy court adopted their private plat dedication theory. That was overturned on appeal. No, no. By special warranty deed that was recorded, they end up with record title to the property, don't they? You're talking about the Rodriguez deed of trust. Yes. The foreclosure and the trustee sale, which is the foundation for their claim. All right. They've got color of title. They have color of title. Period. Which gave, which creates a presumption that they own the property, right? I suppose you can say that, Your Honor, but that wasn't the theory that they pursued. I understand that. It wasn't the theory that they pursued originally, but they end up with it. Not only did they not pursue it originally, they asked the court to set it aside. But eventually, the court below the judge relied on a presumption of title. They did. And entered judgment on that basis. Yes. Why was that beyond the court's power, the judge's power at that stage? As you point out, this had gone on forever. Why is it beyond? Was it beyond the power of the judge at that point to rely on that and determine the case as he did? I believe it was clearly erroneous and incorrect for the reason that, as we pointed out in our ---- Was it beyond his power to do? No. I suppose when you talk about the difference between power and right, of course the bankruptcy court has the power to enter any order they want to. Well, not necessarily. I believe it to be legally incorrect. But you think it was improper and an error to do that. I do. If I get it right, you think that first because of judicial estoppel. Correct. But judicial estoppel, among other things, requires that the theory have been accepted by some prior court. And if I understand it correctly, the theory that the Rodriguez deed of trust had a mutual mistake in it was alternative and had never been adjudicated or accepted by a prior court judgment. There's no question that the Rodriguez deed of trust was an alternative theory. It came in after the court said their only theory or claim was deed by estoppel. It was not until August of 2002, a scant five or six months before trial, and ten years after the complaint they had filed asking the Rodriguez deed of trust be overturned or set aside, that for the first time they realized, hey, we're out of theories. Let's try this one. I understand they had a lot of theories. My question is, was this theory ever accepted by a prior court decision? No. All right. Then your other basis for overcoming the presumption of ownership was that there was mutual mistake in the Parker deed of trust to the Rodriguez's by including the road. Correct. The basis of that ---- to show mutual mistake, perhaps unilateral mistake, but not mutual mistake. Why is that clearly erroneous? Well, to answer that question, Your Honor, I have to go back to the first premise that we just talked about, and that is judicial estoppel. Judicial estoppel applies not only to the presentation of a theory, but also the presentation of facts in judicial admissions. Now, not less than nine times in 1995 and 1996, Sedona Golf Resort told the court's tribunal that this was a mutual mistake. Okay. Let's try just the evidence first. Why was the Bankruptcy Court ---- why should we be convinced firmly that the Bankruptcy Court got it wrong in saying that there was no evidence of mutual mistake? Because under the theory of judicial estoppel, and let me ---- That's a theory, okay? I'm talking about the evidence that was actually adduced. Was there any evidence of mutual as contrasted with single-dealer mistake also in Parker's part? There are cases that say that ---- You're not answering the question. The question is evidence of fact of mutual mistake. Yes. Your Honor, I was getting ready to answer that. The evidence of mutual mistake is, one, Exhibit 38, I believe, which is a board resolution saying that this is the property we intend to encumber. And secondly, the president of RSI that said, I never intended to encumber the entrance road. And there are cases which say, and remember, that testimony was unrebutted, that the inference may be derived from that of a mutual mistake. There was no contrary evidence. Let me ask you a different question. Judge Case found that your clients did not acquire title to the property. If he's right on that, isn't your case over? And I know you dispute that. But if Judge Case, if that one finding is upheld, don't you lose ---- I think so. So tell me why you think he's wrong. He is wrong for three reasons. Number one, I want to go back to judicial estoppel for just a second because I've spent hours and hours reading all of the cases, and I think the most important case, of course, is New Hampshire v. Maine, which is a Supreme Court case on the topic. And they very clearly shied away from making any inflexible formula as to the application of judicial estoppel. They did not say equity is immutable. It is the only way that you can arrive at judicial estoppel. In fact, they said, no, it has to fit the circumstances. Well, in this case, we have ten years or eight years of going along under the presumption that it's a mutual mistake of fact. Not a presumption. They said it was. They had a summary judgment granted on that. And I understand that there are cases that say you have to have a prior determination in favor of that party. But as you can see from all the other cases, judicial estoppel has been applied in circumstances where they were not necessarily the same case or in the same case or in different courts, all different circumstances, which is what judicial estoppel is intended to address, the inequity of the situation. Sure, but we've got a case of New Edge Networks that we recently decided that said you have to have a court decision. So how do you distinguish that? Well, I think that's in conflict with the whole concept of equity, number one. Well, perhaps, but it binds our panel. So how do you distinguish it? It's in conflict with the way I read New Hampshire v. Maine. And to the extent that it establishes a hard and fast rule in equity, I believe the New Hampshire rule is the better rule. I don't think that when you're talking about equity, well, the whole concept of judicial estoppel, I read it in one case. It put it best. There's always the tension between the doctrine of judicial estoppel and the liberal pleading standards. There's always that tension. The court is always trying to find the best way through that minefield, so to speak. And I think what we have here is a situation where the overriding principle is the judicial integrity of the court. And to have individuals stand up and tell the court as a fact, no less than nine times, admit it in open court, their expert admits it, and then to say, oh, by the way, no, that wasn't a fact at all, I think undermines the judicial integrity of the court. And I think that is exactly what the concept of judicial estoppel as applied to admission of fact is designed to prevent. We're not talking about alternate theories here. We're talking about a fact that a mistake was made. Now, I just have one or two other comments I want to make about the devolution of the interest of the corporation, and that is this. The testimony was uncontroverted in March of 1999. The stock was foreclosed upon by Portnella Parker. Well, that's what Ken Parker said, but there's no evidence in the record of what the lien was created, what lien was foreclosed, right? I think the bank – well, the evidence – Is there any evidence in the record of what lien was created and how it was foreclosed or a document of foreclosure? There was no testimony of a description of the lien. The testimony was that the lien existed and it was foreclosed upon. I think – What kind of lien was it? I can't tell from the record. It was a loan. So was it a mortgage, security document, deed of trust? What was it? There were no security documents, and that's where the bankruptcy court has gone off on a tangent. There is no case law that says that there has to be a piece of paper to effectively create a lien on property of any type. We have a good example of that in Arizona. It's mechanics liens. There's not necessarily any piece of paper that says that the party has to have a lien on the property. No, but you have a statutory basis for mechanics liens. What statute or – you have to have a statutory lien or a lien – a voluntary lien. Your Honor, I didn't even research the issue of whether or not it has to be a statutory otherwise because that's never been an issue. No, but it does come down to whether or not you prove that your clients obtain the interest. As I read Arizona law, and you can correct me, it doesn't happen automatically. I know you disagree with this, but often people get the advice of leaving the corporate shell in place. Let people sue the corporate shell. That's the protection that corporations have. And only if they want to convey property do you take some extra measure of interest to transfer a transfer document of some type. I don't see that in the record. All we have is, if I understand this correctly, a dissolution of the corporation. You have then a – we know that Ken Parker was a 70 percent shareholder, and then we have a foreclosure we don't know anything about except that he says there was a lien and they foreclosed. Is that the state of the record? Yes. And it's unrebutted and uncontradicted. You know, they've never said – they have never raised any issue that there are creditors out there that have to be paid. That's a red herring. The statute says that the assets of the corporation distribute to the shareholders subject to the claims of the creditors. There aren't any creditors. It's been 14 years. The statute of limitations has long since run. Normally what would happen, if you did it correctly in my view, is that you would see something in the chain of title because you would see that the corporation has devolved – the assets have devolved to the shareholders. If the shareholders file something indicating acquisition of property, then you would see a lien on the property. Then you would see a foreclosure on the property. That's what would show up as documents in the chain of title. And I know we're all agreed that those documents don't exist in this case. And the only question is whether the testimony of Ken Parker is enough and the operation of Arizona law is enough to prove that your clients acquired the interest. Well, I think the operation of Arizona law is enough, and I think that the unrebutted testimony of Ken Parker as to that issue that was – I mean, where do they say it went? If the stock did not go to Portnella Parker, where did it go? They haven't given you any alternative or even suggested any alternative. Also, under Arizona law, the interest in stock or corporation is an intangible. There are cases that say it's an intangible right. So if it's intangible, I mean, you know, you talk about the necessity for a piece of paper or a document, and it's only proven that there's a document. I can't imagine how many cases are decided on verbal testimony throughout the course of the year. Generally not quite title actions, though. Well, this is an unusual case all the way around, I think. But I think that it is clear that the relief they sought to set aside that deed of trust, that the factual admissions that they made, that this was a mutual mistake, were as admitted by their counsel in open court. If it's a mutual mistake, it's void. End of story. And I only have a minute 30 left, and I'd like to sum up by saying that I read a case yesterday that I didn't cite because it's merely duplicative of all the case law and everything that we cited before, but it has sort of a pithy and direct way of describing – or describing how I feel about the case, and I hope you do after reading through the brief as to what has occurred here. Said plaintiff's shifting characterizations of his claims are not only unpersuasive, but a clear example of a litigant who is attempting to play fast and loose with the judicial system. And they continued on to say, the allegations continue to be recharacterized or mischaracterized under different rhetoric. No matter how much plaintiff attempts to dress them up, confuse the issues, and obfuscate with these evolving theories, the bottom line is these are the same claims. And they finished up by saying, estoppel is another word for enough. And that's what I think we have here, and we would ask the Court to rule in our favor. What is the case, please, that you're reading from? The case is from the Northern District of California District Court, and it's Robin Roderick v. Mazzetti and Associates, Inc. I just have a 2006 U.S. District Lexus number, 46034. Why don't you give a gum sheet to the clerk? You betcha. Thank you. Thank you. Mr. Thompson? Thank you, Your Honor. May it please the Court. My name is Charles Thompson. I'm here with Stephen Berger for the Appali Sedona Golf Resort. This appeal comes to the Court from a trial on the merits that took place in February 2010. And I'm here with Stephen Berger. This is a trial that took place in February 2003 that was presided over by the same judge who has presided over this matter since 1992. Is that Judge McAmely? No, this is Judge Case. Case. It started in bankruptcy court, Your Honor, with before Judge Curley, but was transferred, I believe, in the fall of 1992 to Judge Case. Has your client followed different theories during this 10-year cycle? I think there's no question, Your Honor, but that alternative theories under a rather wide-ranging complaint were — Yeah, but this Rodriguez title thing is a latecomer, is it not? Certainly, the result that the bankruptcy court arrived at in terms of the status of record title was something that was not pursued primarily by my client, but I will say that as early as the order entered by the bankruptcy court in February 1996, Judge Case noted when he granted judgment that was subsequently overruled on dedication by private plat, that my client's alternate theory was that they had title through the Rodriguez's. And that was a theory proposed then, although what the court had gone off on was the private plat dedication? Yes, which presupposed that the corporation, RSI, did not own Ridge Trail Drive when it was encumbered by the deed of trust. So the second theory necessarily had to be in the alternative. Okay. And that went to the State Supreme Court? It went to Judge McNamee. He certified the question. And, yes, the Arizona Supreme Court found that Arizona common law did not adopt a dedication by private plat. So at that point, your client, your firm, or you, resorted to this other theory on the Rodriguez title? Actually, as it came back, Your Honor, the theory we tried the case on, the estoppel theory, also presupposed that at the time with the Rodriguez deed of trust, which was October 1985, RSI did not own Ridge Trail Drive. That was the basis of our estoppel theory, which at trial we did not prevail on. Now that, of course, as Judge Case pointed out, in effect telling both sides, you've both got some primary theories and you can put on your evidence, but here's what I'm going to do if neither of you prevail. I'm going to consider the effect of the Rodriguez deed of trust. And, in fact, that's what happened. I have a lot of respect for Judge Case as a bankruptcy judge, so indulge me and tell me why you think he had jurisdiction over this case. Bear with me, and I'll — I don't want to divert you too much because it's a new issue in the case. I think it's an important issue, Your Honor. And I — and we start with 28 U.S.C., Section 1334B. And back at the time when this adversary action was filed, either originally in 1992 or when the Third Amendment complaint was filed in September 1993, it was filed in four different bankruptcy actions. It was filed in the Ken Parker bankruptcy, the RSI bankruptcy, the Rodriguez bankruptcy, and the Kolb bankruptcy, the Kolbs being the third set of shareholders in RSI. Let me save you some time. Did you — did you allege in your complaint that the debtors in any of those actions had an interest in the property? Yes. Based on pre-petition conduct, at least three of them had claimed some interest at some time in that roadway. And so what Judge Case did was consolidate them all for the purposes of hearing? Yes. Resolution. Early on. Okay. You've answered my question. Okay. And as I had said just now in response to Justice O'Connor's question, the parties did know going into trial what was fair game. And they were entitled to put on their evidence. Although Ella Parker, the late Ella Parker, listed a number of witnesses, she chose to call only one, Ken Parker. And now, based on the brief, there seems to be the equivalent of buyer's remorse on the strategic decisions made at trial and the evidence put in, but more importantly, the evidence not put in the record. And as I said again in response to Justice O'Connor's question, as it turned out, both parties did fail in their primary theories. My client on his estoppel theory, Ella Parker on her devolution by operation of law, and the court, Judge Case, did what he said he was going to do. He considered the effect of the Rodriguez deed of trust. We know from the judgment the title was quieted in my client's favor. Based on that, we did not appeal. Ella Parker had to go. Counsel, would you mind telling me, it isn't relevant, I think, in resolving this case, but what is left at stake now? Is it the amount that will be paid by Yavapai County on the condemnation? Is that what we're left with? Exactly right. The taking occurred. It has gone all the way to the Arizona Supreme Court and been affirmed. And the second part, which is the amount of money and to whom it will be paid. The amount has been set? It has not been. That remains to be determined as well. Okay. And the contending parties are the Parker Estate, in effect? And Sedona Golf Resort. Sedona Golf. Thank you. How much do you allege the property is worth in the condemnation action? I wasn't involved in the condemnation action, Your Honor, and if I said anything, it wouldn't be fair because I just really don't know. A substantial amount, I take it? I think that between the parties, there is, at least on one side, a potential substantial amount. How long is the road? What distance? It's on the order of three-quarters of a mile from the highway to the – and it doesn't just go to the resort, Your Honor. There certainly is a hotel and a golf course, but there's a major subdivision where people live on a full-time basis. So it's more than just a road to a resort. Thank you. This hasn't come up in argument, and let me say it in case there are questions, but there really isn't any doubt in the way this case proceeded, but that Ella Parker was seeking to have Title quieted in her name. As far back as 1995, when she moved for summary judgment, she asked, in fact, for Title to be quieted in her name, and the trial court judge, Judge Case, then correctly recognized that Ella Parker wasn't just defending against my client's complaint, but she was asking for affirmative relief in her name, which she would have to do because she had no indicia of Title, nothing of record to support her claim of ownership. As a consequence, and properly under Arizona law, Judge Case imposed the burden on Ella Parker to prove her Title. The case law she cites in her brief from Arizona stands for that proposition, and, in fact, we found cases, although rather dated cases in Arizona, but we found cases where Title was, in fact, quieted only on an answer to a complaint. In that circumstance, the Supreme Court of Arizona instructed that the defendant, like Ella Parker in this case, had the burden of proving the Title they sought. The existence of the constructive trust whereby the Rodriguez's held Ridge Trail Drive and trust for Ella Parker was the primary theory she pursued for having Title in her name. It appears that that theory has now been abandoned because it's not discussed in the brief, but it is helpful to put the entire case in perspective to talk a little bit about a brief chronology of facts. Well, before you launch into that on this, because of the ownership question, can you help me out with something that we've all read the brief, so we're familiar with the situation, but what's not contained in the brief is what happened with the RSI bankruptcy? Presumably, the RSI bankruptcy would have had the assets to control the Title. Do we know what happened in that bankruptcy? We do, in fact, know what happened, Your Honor. We know, first, that the RSI bankruptcy was filed on May 12, 1992, along with, at the same date, the Ken Parker bankruptcy, which is one day after the trust deed in favor of the Rodriguez's was recorded. So in the bankruptcy schedules ---- Were they Chapter 7s or 11s? Do you know? I believe it started as 11, Your Honor, but, again, I wasn't involved and I can only state my supposition. But we do know, because it was in evidence as Exhibit 2, that Ken Parker signed under oath bankruptcy schedules for RSI in which the Rich Trail Drive was not listed as an asset, but in which he represented that it had been transferred by RSI within one year previous to the filing of the bankruptcy. And on cross-examination, he admitted that what he meant was it had been transferred when the Rodriguez's foreclosed on it on May 8. So it was ---- the Rich Trail Drive was not an asset in the RSI bankrupt estate for that reason, and in 1994, I believe, that bankruptcy was dismissed for failure to file either schedules or reports. So we have the corporation being involuntarily dissolved in 1990? Well, not quite, Your Honor. We have the corporate charter being revoked. All right. Corporate charter. In 1990. In 1990, corporate charter was revoked, and in 1992, that corporation files bankruptcy. And represents to the court that it still has assets and creditors. I see. On the constructive trust, I won't give the chronology. It is in the brief. There was a failure proof at trial by Ella Parker. The only testimony she presented was from Ken Parker himself about what he believed, not what the Rodriguez's or, for that matter, even her mother believed about this deed of trust. I mean, we do know a little bit from around the edges that there was supposedly some kind of conference call on May 7, 1992, the day before the trustee sale, wherein there was a secret side deal supposedly of some kind. But that was not established to the trial court's satisfaction. That is not clearly erroneous. And as Judge Case pointed out, if that secret side deal really was an express or resultant trust, it was barred by the statute of frauds. Nothing was in writing. Now, part and parcel of the constructive trust theory was the argument by Ella Parker that RSI never really lost title to Ridge Trail Drive because of the mutual mistake that you discussed with opposing counsel. We have gone over this, but they rely on alleged judicial admissions by my client, but they have failed to satisfy the test established in the Supreme Court in the New Hampshire case and adopted in this circuit. I mean, essentially, all of the sound bites. So judicial admissions would be somewhat different from judicial estoppel. And I agree, Your Honor. I mean, they would be in the nature of a fact if. And I have misspoke. I apologize. But the sound bites that are quoted to you, as you have pointed out in your questions, come from proceedings in 1995, in 1998, when my client was, in fact, pursuing an alternative theory that relied on Ridge Trail Drive having already been transferred by RSI before the Rodriguez deed of trust. And if RSI no longer owned Ridge Trail Drive in October 1995, it certainly couldn't have been encumbered in favor of the Rodriguezes, and that was our position then and, frankly, all the way through trial. Ms. Johnson, let me ask you a question because I don't have access to the full record. Did Judge Case actually rule on the judicial admissions? I believe so, Your Honor. So that there were some or there were not any? That they did not rise to that level. Okay. So they're not the judicial admissions as such were not then part of the evidence. They were not, Your Honor. Judge Case, in fact, I believe carefully explains in his decision on the trial why they aren't judicial admissions. And he is uniquely in a position to understand the context in which those statements and arguments were made and what they did and, more importantly, what they did not relate to. And, I mean, and finally, I guess I would say, with respect to judicial admissions, it's a discretionary doctrine. The fact that Judge Case chose not to apply it certainly wasn't an abuse of discussion in this case. The secondary theory pursued by Ella Parker at trial was the devolution by operation of law. And, again, I won't go through the list, but I was set to tick off all the things that she did not prove at trial, which have already been pointed out in a previous question by the court to opposing counsel. It is significant that the legislation was not devolved. Let me ask you a question. Why didn't you raise the RSI bankruptcy? It seems to me that that's almost the trump card here. It's not before us really now. But if the corporation is in existence and files bankruptcy, then obviously it wasn't dissolved formally and the title didn't pass pre-bankruptcy. And, in fact, that certainly was our argument, Your Honor. As a matter of ---- as an evidentiary matter, that is why we presented those schedules to show that it was still in existence, it still had assets, it still had creditors, and, in fact, according to the sworn schedule signed by Mr. Parker, it had been ---- it had owned Ridge Trail Drive until the time of foreclosure. Therefore, we argued it could not have devolved or done anything else to him and then to his parents, you know, in addition to all the other ---- So that was your argument, yeah. Indeed. Okay. That makes sense. And the reason, Your Honor, to follow up on that point that I said the fact proved at trial was revocation of corporate existence, not dissolution, is that the former does not equal the latter. Right. The charter was revoked and your contention was the corporation wasn't dissolved. The government is out of a position to go out and collect the assets and take some formal steps. Again, no proof of any of that, and it's important. We're in trial. We're in trial on the merits where the parties are supposed to put their proof in the record and not stand up at the end of the case and say, well, in effect, I didn't put it in the record here, but they said something 8 or 10 years ago that I think resolves that. I mean, it wasn't that kind of proceeding. On the bottom line, both parties, and it's important, I think, that they were the only two parties fighting over Ridge Trail Drive after 11 years of litigation. Both parties failed to sustain their primary theories at trial. We know that a quiet title action is an equitable action, and a court sitting in equity has jurisdiction to give general and complete relief, to avoid multiplicity of suits, and provide finality, even if it has to go beyond the express claims of the parties. It was therefore appropriate for Judge Case to, in effect, say, well, what do we have now? I gave both parties a chance. They put on their proof. They didn't satisfy me. What do we have left? And what we have left are the official records of Yavapai County, which show record title in my client. We know from a previous question that creates a rebuttable presumption, and we know that presumption was not rebutted by Ella Parker. She never had a deed. She never had any other record indicia of title. The Court, therefore, correctly ruled on the status of record title, and that ruling should not be overturned. Therefore, I would ask this panel to affirm the district court affirming the judgment of the bankruptcy court. Thank you. Kagan. Thank you, Mr. Chomsky. Mr. Ostrand. Just one point in my two seconds, and that is you asked me what evidence existed on the mutual mistake. We did ask the Court to take judicial notice of the admissions. We did move for the introduction of the affidavit of the expert. Thank you. Thank you, counsel. The matter just argued will be submitted. Okay. Thank you. Thank you. And we'll next hear argument in J&G sales.
judges: O'connor, Rymer, Thomas